IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

V.                                                    CRIMINAL CASE NO.
                                                      3:08-CR-14
ROBERT L. MOULTRIE;
NIXON E. CAWOOD; CHARLES K.
MOREHEAD; FACILITY HOLDINGS
CORP. d/b/a THE FACILITY GROUP,
FACILITY MANAGEMENT GROUP, INC.,
FACILITY CONSTRICTION
MANAGEMENT INC., and
FACILITY DESIGN GROUP


ORDER

Carothers Construction Company, Inc. ("CCC") has asked the court to quash a Rule 17(c) subpoena *duces tecum* requiring CCC to produce certain documents [docket no.115]. The court ordered the issuance of the subpoena [docket no. 89] on motion of defendant Robert L. Moultrie [docket no. 73]. The court stayed return on the subpoena pending ruling on CCC's request to quash it. CCC contends that the subpoena should be quashed because it was obtained *ex parte* in violation of Rule 17 (c) (*See* docket no. 115 at ¶ 7), Moultrie did not meet his burden of proving the relevance, admissibility and specificity of the documents requested and the requested documents between CCC and Purdy & Germany are protected by the attorney-client privilege and work product doctrine. Moultrie has withdrawn his request for communications between CCC and Purdy & Germany. *See* Response to Motion to Quash, p.9.

Defendants are charged with conspiring with each other to defraud the government in connection with the building of a beef processing plant in Yalobusha County, Mississippi. In 2001, Richard Hall submitted a business plan for the construction and operation of the plant,

requesting approximately $17,000,000 in state funds, $5,000,000 of which would be in the form of a grant. Pursuant to an enabling statute, the Mississippi Development Authority approved a fully State backed loan guarantee for Hall. Armed with the State's guaranty of the processing plant financing, Hall obtained a loan and a line of credit from Community Bank. After competitive bidding, CCC was awarded the building contract for the plant on April 16, 2002.

By February 2003, the plant project was over budget and behind schedule. Due to the cost overruns and the delays, the project was stopped in order to assess its continued viability. Shortly thereafter, The Facility Group ("TFG")[1] submitted a proposal to evaluate the plant construction and to become the project manager in charge of completing the plant.[2] CCC, in partnership with Hendon Redmond, submitted a competing bid to act as the project manager. The State selected TFG to manage the plant project, and TFG entered into a project management agreement for its services (the "Agreement"). Under the Agreement TFG's compensated for its services took two forms – a lump sum fee of $3,547,974.00 and reimbursement "at cost" for costs associated with the project.

The defendants were first indicted on February 13, 2008. A superseding indictment includes counts of conspiracy to defraud the government and mail fraud in relation to the defendants' management of the beef processing plant project. The alleged crimes involved certain billing and payroll practices; thus, records of invoices, payments and payroll accounts are

---

[1] Facility Holding Corp. operates as The Facility Group; Facility Management Group, Inc. ("FMGI"); Facility Management Construction Management, Inc. ("FCMI"); and Facility Design Group ("FDGI").

[2] The individual defendants in this action include: 1) Charles Moultrie, Chairman and Chief Executive Officer of TFG; 2) Nixon Cawood, President and Chief Operating Officer; and 3) Charles Morehead, Executive Vice President of the Project Quality Management Group of TFG.

relevant to both the prosecution and defense.

Sean Carothers was the chief executive officer of CCC, the construction company for the project during the relevant period and has been named by the United States as an expert witness in this case based upon his expertise in construction and in government contracts, making him both a fact witness and an expert witness in this case. Carothers is expected to opine on the following topics based upon his experience with CCC: corporate structure/intercompany billings; accounting; determining FCMI's actual cost; FCMI labor billing; alleged cost overbilling; design-FDGI overbillings; other allocated overbillings; and insurance overbilling. (*See* Moultrie's response, docket no. 138, p.2).

The subpoena requests fourteen categories of documents from January 1, 2002 through December 31, 2004. CCC has grouped these requests into five generalized categories. Although the court prefers to address discovery matters explicitly, Moultrie has responded to these generalized categorizations; thus, the court's analysis will follow this format. The five categories of requested documents include:

> 1) Records reflecting how Carothers Construction billed the beef plant project under Carothers' contract to build the beef plant;
> 2) Records reflecting how Carothers Construction would have billed the beef plant project under its rejected bid to be Project Manager;
> 3) All documents showing money paid from Carothers Construction or Sean Carothers to Richard Hall or any entity Hall had an interest in;
> 4) All correspondence between Carothers Construction and any other entity involved in any aspect of the beef plant project; and
> 5) All communication passing between Carothers Construction and attorneys William Purdy and Ralph Germany. [withdrawn by Moultire]

*See* CCC's motion to quash, docket no. 117 at p. 14.

Under Rule 17(b) of the Federal Rules of Criminal Procedure, an indigent defendant may obtain the issuance of a subpoena at the Government's expense by filing an *ex parte* application.

Ordinarily, *ex parte* refers to something done for the benefit of one party, without notice to, or argument by, any person adversely interested.[3] The reference to *ex parte* in Rule 17(b) refers to the fact that an indigent defendant may request that the Government pay the costs of subpoenaing a witness, outside the presence of the Government's prosecutors, in order to shield the defendant's theory of his defense from the prosecutor's scrutiny. *See United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir. 1973). CCC argues that Rule 17(b) precludes issuance an *ex parte* subpoena unless the requesting party is indigent; this argument is based upon a misinterpretation of the Rule. Nothing in Rule 17 prevents the issuance of an *ex parte* subpoena to a third party. Rather, Rule 17 is the only method which a party may use to obtain documents or materials, in a criminal proceeding, from a third party or the Government if the documents will not be put into evidence by the Government. *Bowman Dairy Co. V. United States*, 341 U.S. 214, 219-20 (1951).

Rule 17 is not a general discovery tool, nor was it ever intended to be such a device. *Bowman*, 341 U.S. at 220. The intent of the Rule was to expedite trial by providing a time and a place for inspection of documents before trial. *Id.* There was, however, no intent to exclude from the reach of the defendant any material used before the grand jury or that could be used at trial. *Id.* Any document or other material, admissible as evidence, obtained by the Government from third parities is subject to subpoena. *Id.*

The court may quash or limit a subpoena if compliance with the subpoena would be unreasonable or oppressive. Fed.R.Crim.P. 17(c)(2) *United States v. Nixon*,[4] recognized the

---

[3] *Black's Law Dictionary* 597 (7th ed. 1999).

[4] 418 U.S. 683 (1974).

four conditions that must be present to support a subpoena duces tecum under Rule 17. The moving party must show that (1) the documents are evidentiary and relevant, (2) they are not otherwise reasonably procurable in advance of trial by exercise of due diligence, (3) the party cannot prepare for trial without such production in advance of trial, and failure to do so may unreasonably delay trial, and (4) the application is made in good faith and is not as a general fishing expedition. *Nixon*, 418 U.S. at 699-700. To carry his burden the movant must demonstrate relevancy, admissibility and specificity. *Id. See also United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992).

The requesting party must make a good faith effort to obtain evidence and not embark on a fishing expedition. *Bowman Dairy*, 341 U.S. at 220. The specificity and relevance elements require a description that makes clear what documents are sought. *Arditti*, 955 F. 3d at 345. The subpoena must refer to specific documents or, at least to specific kinds of documents. *United States v. King*, 164 F.R.D. 542, 546 (D.Kan. 1996) (citing to 2 Charles A. Wright, *Federal Practice and Procedure* § 275 at 159 (1982). The requesting party must specify why the documents are wanted, the information contained in the documents, the relevancy of those documents and potential admissibility. *Id.* (citing *Arditti*, 955 F.2d at 345-46). But the subpoena need not designate each particular paper sought. It is sufficient if the kinds of documents are identified with reasonable particularity. 2 *Fed. Prac. & Proc. Crim .3d* § 275 (2008).

Rules 17's admissibility requirement does not require the court to make a determination that the requested documents are admissible – only that they may reasonably be used as admissible evidence. *See Nixon,* 418 U.S. at 701-2. Further, there is no requirement that all requested documents be used as evidence. *Bowman Dairy*, 341 U.S. at 219.

Moultrie has satisfied the *Nixon* test for the issuance of the Rule 17 subpoena upon CCC. The documents are described with sufficient specificity, they are clearly relevant to the defense of the counts found in the superseding indictment, and he has made an adequate showing that the documents may be admissible at trial.

The challenged subpoena enumerates both the form of the documents requested and the specific categories of documents. The initial description of "document" describes where the requested documents or materials may be found or an example of the materials requested. The subpoena designates the time frame for the documents requested – January 1, 2002 through December 31, 2004. This time period corresponds to the period of the construction and CCC's involvement in the beef project; thus, it is reasonable. The subpoena then itemizes the fourteen categories of documents requested. The court finds that Moultrie's descriptions of the requested documents include enough detail for CCC's record keeper to identify and produce the requested documents.

The relevancy and admissibility of the documents are related concepts, and the court will discuss the requested documents in the generalized categories described by CCC. Carothers was the CEO of CCC, the company which constructed the plant, and will be called as both an expert and fact witness by the Government. The first category of documents are the "[r]ecords reflecting how Carothers Construction billed the beef plant project under Carothers' contract to build the beef plant." These documents are relevant and potentially admissible because they relate to CCC's billing procedures before and after TFG's involvement in the beef plant project and a portion of the labor costs of the project that play an important role in the Government's description of the alleged crimes, as well as establishment of Carothers' expertise as an expert in

construction contracts. The second category of documents "[r]ecords reflecting how Carothers Construction would have billed the beef plant project under its rejected bid to be Project Manager" relate to Carothers's expertise in construction matters and may serve to support or refute the manner in which TFG managed the beef processing project, an issue which is at the center of the case. Next, "[a]ll documents showing money paid from Carothers Construction or Sean Carothers to Richard Hall or any entity Hall had an interest in" are relevant to the conduct and motivation of Carothers and may be admissible as impeachment evidence. Finally, the description "[a]ll correspondence between Carothers Construction and any other entity involved in any aspect of the beef plant project" is a not entirely accurate characterization. The generalization refers to document request number 9 in the subpoena, which requests particular correspondence from or to CCC, Richard Hall, Community Bank, the Mississippi Land, Water and Timber Board, Hendon & Redmond, the Mississippi Development Authority and any other State agency regarding the Mississippi beef plant project. These documents are relevant to the development, financing and progress of the design and construction of the beef plant project both before and after TFG's involvement. Further, these documents or other materials may be admissible to impeach Carothers. Therefore, Moultrie has made the necessary showing that the requested documents are relevant, specific and admissible.

Moultrie satisfied the four part *Nixon* test to support issuance of the subpoena, and the court finds that conclusion is still correct. The requested documents are evidentiary and relevant. Second, CCC is not a party in this matter; thus, the only method of obtaining those documents before trial is with a Rule 17 subpoena. Moultrie needs the documents before the trial to prepare his defense and not unnecessarily delay trial. Many of the documents, especially

7

the financial and cost-related materials, require review and analysis, which if not provided prior to trial will cause an unreasonable delay in the progress of the trial. Furthermore, considering both the level of Carothers's and CCC's involvement in the construction and development of the beef processing plant and Carothers's role as both a fact and expert witness, there is good cause to request the specified documents. For these reasons, it is ORDERED

That CCC's motion to quash the Rule 17 subpoena is DENIED IN PART and MOOT IN PART

CCC shall produce the requested documents and materials, except for those described in the subpoena in number 14, by 12:00 p.m. on August 18, 2008

This the 8th day of August, 2008.

                                         /s/ S. ALLAN ALEXANDER
                                         U.S. MAGISTRATE JUDGE